IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ELIZABETH E. FISCHER, STEVE M. FISCHER,
and ANNETTE L. FISCHER,

                                                    OPINION AND ORDER

             Plaintiffs,

                                                    12-cv-876-bbc

    v.

UNITED STATES OF AMERICA, BRIAN A. CLAUSS,
GOVERNMENT EMPLOYEES INSURANCE COMPANY
and WISCONSIN MUTUAL INSURANCE COMPANY,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In this case brought under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, plaintiffs Elizabeth Fischer, Steve Fischer and Annette Fischer contend that defendant Brian Clauss acted negligently when he hit a car driven by Elizabeth Fischer while he was driving to a Kwick Trip store for groceries in a vehicle owned by the federal government. At the time of the accident, Clauss was an employee of the United States Department of the Interior on temporary assignment from his home office in Maryland to the Necedah National Wildlife Refuge in Wisconsin.

     The case is before the court on the question whether Clauss was acting within the scope of his employment at the time of the accident. Unless the answer to this question is yes, defendant United States of America cannot be held liable under the FTCA. 28 U.S.C. § 2679(b).

1

Three matters related to the scope of employment are before the court: (1) plaintiffs' motion for partial summary judgment, dkt. #83; (2) a motion for partial summary judgment and petition for certification under 28 U.S.C. § 2679(d)(3) (allowing court to certify scope of employment where Attorney General has refused to do so), filed by defendant Clauss and his insurer, defendant Government Employees Insurance Company (GEICO), dkt. #86; and (3) the government's request for an evidentiary hearing, dkt. #93. Also before the court are cross motions for partial summary judgment filed by plaintiffs and their insurance company, defendant Wisconsin Mutual Insurance Company, on plaintiffs' underinsured motorist claim. Dkt. ##49 and 79. Plaintiffs have indicated that they are asserting their entitlement to underinsured motorist coverage only if the court determines that Clauss was not acting within the scope of his employment at the time of the accident. Dkt. #76 at 1-2.

I conclude that the undisputed facts establish that Clauss was acting within the scope of his employment at the time of the accident. Accordingly, I am granting the motions for summary judgment filed by plaintiffs, Clauss and GEICO on scope of employment and denying the cross motions for summary judgment filed by plaintiffs and Wisconsin Mutual on the underinsured motorist claim. Although plaintiffs will not be pursuing their underinsured motorist claim, defendant Wisconsin Mutual will remain in the case because it may have a subrogation claim for medical payments made on behalf of Elizabeth Fischer.

The government's request for an evidentiary hearing will be denied as unnecessary because there are no material facts in dispute. For the same reason, it is unnecessary to resolve the parties' dispute over whether the court or a jury should resolve genuine issues of

material fact related to the scope of employment. (I previously asked the parties to address this issue in any future summary judgment motions. Dkt. #66. Plaintiffs and the government contend that any action against the federal government shall be tried to the court. 28 U.S.C. § 2402. Defendants Clauss and GEICO requested that a jury decide any disputed issues of fact, arguing that the government had not yet been substituted as the sole defendant.)

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

UNDISPUTED FACTS

A. Clauss's Work Assignment

Defendant Brian Clauss is a resident of Maryland and has been employed by the United States Department of the Interior for approximately 21 years. At all times relevant to this case, he worked as a biological science technician for the United States Geological Survey (a subdivision of the Department of Interior) on the whooping crane migration project. His primary place of employment or "duty station" is the Patuxent Wildlife Resource Center located outside Laurel, Maryland. His immediate supervisor is Jonathan Male, a supervisory biological science technician, who reports to Dr. John French, Jr., the branch chief at Patuxent.

Because the whooping cranes spend their summers at the Necedah National Wildlife Refuge near Necedah, Wisconsin, Clauss often travels to the refuge in the fall to assist in the

flock's migration to Florida.  His assignments to the refuge last from three to four days to six to eight weeks. When Male asked for assistance with the fall 2010 migration in Necedah, Clauss volunteered.  He expected his assignment to last three to four weeks.  Clauss's sole purpose in working at the refuge was to serve the interests of his employer.

In preparation for the fall 2010 assignment, the government issued Clauss a "Travel Authorization," which authorized him to travel to "[a]ll points foreign and domestic when necessary to conduct official business of the Patuxent Wildlife Research Center, when directed to do so by your supervisor." French signed the authorization, which approved the use of a "government-owned conveyance" as a "Mode of Travel" and explained the travel as follows:

> 10.  **PURPOSE AND REMARKS**:
> Performance of official duties of the Patuxent Wildlife Research Center (EXCLUDING) (1) Travel to attend training, (2) Foreign Travel still requires a DI-1175 . . . , (3) Travel funded by a non-federal source when authorized under 31 USC 1350 and the Ethics Office requires a DI-2000 and (4) Conference travel as described in FAM2001-011 and FAN 2001-012.

Clauss was assigned and issued a 2007 Ford Ranger pickup truck to drive from Maryland to Wisconsin and use at his discretion while living and working on the refuge. When Clauss left Maryland in September 2010 and headed to the Necedah Refuge, it was Male's understanding that Clauss was on official government travel.

Clauss did not have a supervisor or boss on the refuge and was authorized to exercise his own discretion regarding the performance of his duties.  His official position description reads in relevant part as follows:

> Factor 2 – Supervisory controls

4

> The supervisor provides direction and priorities, objectives and deadlines for work previously performed and cover by precedent. The supervisor provides more detailed information on new or unusual assignments. The employee exercises initiative in resolving routine problems, but seeks assistance in resolving significant technical or procedural problems, usually in a group decision making context. . .
>
> Factor 4 – Complexity
> The work requires the performance of various technical duties that involve different and unrelated processes and methods. The employee exercises discretion and judgment in selecting from various approaches to planning, and conducting the work and in applying conventional methods, approaches, and techniques to new situations. Independently resolves precedent technical and procedural problems encountered in planning, executing, and finalizing assignment.
>
> Factor 9 – Work environment
> The work environment varies from laboratory setting to field sites and offices. The work involves moderate risks and discomforts (such as high noise levels and exposure to aggressive cranes), chemicals, and adverse weather conditions that may require special safety procedures to be followed. Because the work involves the care and propagation of live animals, unusual schedules or extended hours may be necessary, including weekends and holidays.

Clauss did not have set work hours on the refuge and did not punch a clock or record his hours in any way. He had the discretion and flexibility to determine when he performed his work duties during the day. Clauss had to be ready to work and respond to any problems that arose, 24 hours a day, seven days a week. Although he performed most of his work during daylight hours, he had to deal with matters that came up at any time during the day or night. On most days, Clauss met with other staff at 6:30 or 7:00 am to discuss the work day.

5

Clauss was assigned government-owned housing consisting of a Federal Emergency Management Act (FEMA) trailer that had several bedrooms and a common area. The common area included a kitchen with a refrigerator, stove, microwave, sink and cupboards. Although his living arrangements did not include food, the government paid him a per diem rate of $46 as reimbursement for his food expenses. On some occasions, Clauss would eat at a restaurant, but on most occasions he purchased groceries that he stored, prepared and ate in the kitchen of his FEMA trailer. He usually chose to travel into Necedah for groceries during the early morning or evening when other work was not being performed at the refuge. Male expected and intended Clauss to use the government-owned truck to go off the refuge to get food. French also understood that Clauss was authorized to use the truck to get food in Necedah, but he expected his employees doing field work to eat at times when it did not interfere with their work.

B. The Accident

The accident at issue in this case occurred at about 5:30 a.m. on October 3, 2010 in Juneau County, Wisconsin. At the time of the accident, Clauss was driving his government-owned truck on a direct route from his living quarters on the refuge to the Kwik Trip store in Necedah. He intended to purchase groceries and transport them back to his living quarters on the refuge. (The parties dispute whether Clauss also intended to get gas for his truck and call his wife, a fellow USGS employee, to talk about the whooping crane

migration.) Because Necedah did not have a grocery store, the Kwik Trip was the only place in Necedah to purchase groceries.

A few days after the accident, Clauss's employer required him to fill out a form titled "Motor Vehicle Accident Report." On Section X, line 74, of the report, Clauss identified the "exact purpose of trip" to be "to get groceries while on travel." As Clauss's supervisor, Male was required to fill out part of the report, and he provided the following information:

> 81. COMPLETED BY DRIVER'S SUPERVISOR
>
>    a. DID THIS ACCIDENT OCCUR WITHIN THE EMPLOYEE'S SCOPE OF DUTY   ■ YES   ❏ NO
>
>    b. COMMENTS: Employee was on gov. time at time of accident.

### C. Vehicle Management Handbook

The United States Department of the Interior Motor Vehicle Management Handbook provides "uniform guidelines for the acquisition, management, maintenance and disposal of owned, commercially-leased, and General Services Administration (GSA)-provided vehicles by bureaus and offices of the Department of the Interior" and "implements laws and regulations mandated by Congress, Executive Order, the Office of Management and Budget, and internal Departmental policy and procedures." The handbook states the following regarding the use of government-owned vehicles:

> 2. **Official Use**. Government owned, leased, or otherwise managed motor vehicles shall be obtained and utilized only to the extent required for the efficient and effective transaction of official Government business. Government motor vehicles are not provided for the convenience of DOI employees.

    A.  It is official business when a Government motor vehicle is used:

> (3)  While on official temporary duty (TDY) travel assignments as documented and approved on DOI Form 1020 (Travel Authorization). Secretary approval is not required for home-to-work transportation during official travel. This includes using a Government motor vehicle for transportation for the following purposes:
>
>                         *   *   *
>
> (g)  From place of lodging at a temporary duty station, where other reasonable means of transportation are not available, to obtain goods or services necessary to the health and well-being of the employee. This includes travel in a Government vehicle to obtain medical services, attend religious services, and to obtain goods and services at restaurants, barbershops, beauty shops, drugstores, laundries, and dry-cleaning establishments.

## OPINION

The Federal Tort Claims Act (FTCA) provides a limited waiver of the federal government's sovereign immunity, giving federal courts jurisdiction over claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Because a claim brought under the FTCA is governed by "the law of the place where the act or omission occurred," id., Wisconsin law governs whether Clauss was acting within the scope of his

employment at the time of the accident, Taboas v. Mlynczak, 149 F.3d 576, 582 (7th Cir. 1998).

Wisconsin requires courts to consider the employee's intent in determining whether the employee's conduct falls within the scope of his employment. Olson v. Connerly, 156 Wis. 2d 488, 499-500, 457 N.W.2d 479, 483-84 (1990) (citing cases); Block v. Gomez, 201 Wis. 2d 795, 806, 549 N.W.2d 783, 788 (Ct. App. 1996). Employees act within the scope of their employment as long as they are, "at a minimum, 'partially actuated by a purpose to serve the employer.'" Block, 201 Wis. 2d at 806 (quoting Olson, 156 Wis. 2d at 499). "Serving the employer need not be the sole purpose of the employee's conduct, nor need it be even the primary purpose." Id. An employee's conduct falls outside of the scope of his or her employment "if it is too little actuated by a purpose to serve the employer or if it is motivated entirely by the employee's own purpose," or "if the employee fully steps aside from conducting the employer's business to procure a predominantly personal benefit." Id. The test is similar to that set forth in the Restatement (Third) of Agency § 7.07(2) (2006):

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

As a general rule, an employee in Wisconsin is not acting within the scope of his employment when commuting from his home to or from his given place of employment unless the employer exercises control over the "method or route" of the employee's travel to or from work. Geldnich v. Burg, 202 Wis. 209, 210, 231 N.W. 624, 624 (1930); DeRuyter

by Jacquart v. Wisconsin Electric Power Co., 200 Wis. 2d 349, 360-61, 546 N.W.2d 534, 539-40 (Wis. Ct. App. 1996). In DeRuyter, 200 Wis. 2d at 355–56, the employee was involved in a car accident while driving from his home to a vocational training session at his employer's central training center. The court focused on the employer's control and found that "without such control, the employee is not actuated by a purpose to serve the employer . . . but is solely promoting the employee's 'own convenience.'" Id. at 361-62 (citing Strack v. Strack, 12 Wis. 2d 537, 542, 107 N.W.2d 632, 634 (1961)). Where the employee does not have a fixed place of employment, however, courts have held that the DeRuyter employer-control analysis does not apply, and the inquiry focuses solely on whether the employee is "actuated by a purpose to serve his employer." Brown v. Acuity, 2013 WI 60, ¶32, 348 Wis. 2d 603, 619, 833 N.W.2d 96, 104 (volunteer firefighter traveled to different locations at request of his employer); Murray v. Travelers Insurance Co., 229 Wis. 2d 819, 828, 601 N.W.2d 661, 664-65 (Ct. App. 1999) (physical therapist traveled to and from homes of her patients to perform her work).

Plaintiffs, Clauss and GEICO go to great lengths to distinguish between "commuting" cases and "traveling" cases, arguing that Clauss better fits the definition of a "traveling" employee. They contend that Clauss acted with at least a partial intent to serve his employer at the time of the accident because he was using a government vehicle while on assignment away from home to purchase food for which the government gave him a per diem. (Clauss alleges that at the time of the accident, he also planned to get gas for his government-owned truck and to call his wife, a fellow co-worker, to discuss the whooping cranes. However,

because I agree with the government that these facts are in dispute, I have not considered them in deciding the motions.) The government argues that even though Clauss was on temporary assignment at the refuge and had no set work hours, his employer did not control every activity that he engaged in. It contends that Clauss's grocery shopping was merely a personal errand that he was performing during his free time.

I agree that Clauss is not the typical "commuting" employee. He was on temporary assignment away from his home and not driving between his home and regular place of employment. Given the nature of Clauss's work, he was constantly subject to the demands of his job. The government controlled where he lived, his method of travel and his time. As a result, he is more akin to the volunteer firefighter in Brown or the physical therapist in Murray, who traveled to sites determined by the location of their clients. However, even if Clauss is a traveling employee, he still must have been actuated at least in part by a purpose to serve his employer at the time of the accident. Restatement (Third) of Agency § 7.06, Cmt. b ("If an employee commits a tort . . . while acting within a course of conduct subject to the employer's control, the employee's conduct is within the scope of employment unless the employee was engaged in an independent course of conduct not intended to further any purpose of the employer."); WI JI-Civ 4045, "Servant: Scope of Employment While Traveling" (where "it is the employer's trip and the employee makes any detours for purely personal objectives, such detours must be separated from the main trip and the employee held to be outside the scope of his employment"); Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 428 (2d ed.) (employee who is working out of town and on

11

call or on duty at all times may remain in course of employment even during travel, but vicarious liability will follow only where employee not engaged in purely personal activity). For example, in Brown and Murray, the employees were both en route to a job at the time of their accidents. In this case, Clauss was on his way to buy food. Therefore, the question is whether Clauss was acting at least in part with a purpose to serve his employer at the time of the accident.

As the government notes, it is generally true that "where an employer permitted an employee the use of a car in going to his meals, the employee was not facilitating the master's business, and the master was not responsible for damages resulting from his negligence while on such trips." Geldnich, 202 Wis. at 209 (citing Steffen v. McNaughton, 142 Wis. 49, 124 N.W. 1016 (1922); Gewanski v. Ellsworth, 166 Wis. 250, 164 N.W. 996 (1917); Bloom v. Krueger, 182 Wis. 29, 195 N.W. 851). In Gewanski, 166 Wis. 250, the court explained that

> In order to create a liability for the use of the automobile of the master by the servant two things must appear: First, the use must be with the knowledge and consent of the master; and, second, it must be used within the scope of the employment and to facilitate the master's business. While it is true that fair and generous treatment on the part of the master is likely to produce a corresponding sense of loyalty on the part of the servant, it cannot be said that such treatment of a servant by a master in any way promotes or facilitates the master's business in a legal sense.

Thus, even if an employer gives the employee permission to use a vehicle to get his lunch, that fact alone is not sufficient to bring the employee within the scope of his employment. As the supreme court has explained, the scope of employment determination "involves an inquiry into the contract of . . . employment and the relation of [the

employee's] acts at the time of the accident to the service he actually performed pursuant to his employment." Steffen, 124 N.W. at 1017. For example, in Steffen, the court found the relevant question to be whether the use of the employer's car was "a permissive privilege granted to (him), of which he availed himself, to facilitate his labor and service, and . . . equally connected with it and the relation of master and servant." Steffen, 124 N.W. at 1017-18. See also Wis JI-CIV 4035 (employee acting within scope of employment when "in obedience to the express orders or direction of his or her master, or doing that which is warranted within the terms of his or her express or implied authority, considering the nature of the services required, the instructions which he or she has received, and the circumstances under which his or her work is being done or the services are being rendered").

In this case, it is undisputed that the government not only authorized Clauss to use the truck to get his meals but actually considered it official government business to do so. His supervisors expected him to travel to get food as part of his work on the refuge because the assignment placed him in an isolated location with an "unusual schedule" and extended hours. In addition, the Department of Interior's vehicle management handbook states that an employee who travels "from a place of lodging at a temporary duty station, where other reasonable means of transportation are not available, to obtain goods or services necessary to the health and well-being of the employee" is on "official business." The handbook further states that the vehicle is not provided for the convenience of the employee. It is clear from this language that the government viewed such trips as facilitating the work of an employee temporarily assigned to a remote location. Restatement (Third) of Agency § 7.06,

Cmt. d (purely personal acts such as eating may be within scope of employment because they are incidental to employee's performance of assigned work).

The government has requested an evidentiary hearing to resolve the scope of employment issue. However, because the undisputed facts in this case point to only one reasonable conclusion, a hearing is unnecessary. For the reasons explained above, the partial motions for summary judgment filed by plaintiffs and defendants Clauss and GEICO will be granted and I will certify under 28 U.S.C. § 2679(d)(3) that Clauss was acting within the scope of his employment at the time of the accident. As a result, defendants Clauss and GEICO will be dismissed from this lawsuit.

ORDER

IT IS ORDERED that

1. The motion for partial summary judgment filed by plaintiffs Elizabeth Fischer, Steve Fischer and Annette Fischer, dkt. #83, is GRANTED;

2. The petition for certification under 28 U.S.C. § 2679(d)(3) and motion for partial summary judgment filed by defendants Brian Clauss and Government Employees Insurance Company, dkt. #86, is GRANTED;

3. The cross motions for partial summary judgment filed by plaintiffs and defendant Wisconsin Mutual Insurance Company, dkt. ##49 and 79, are DENIED as unnecessary and the underinsured motorist claim against Wisconsin Mutual is DISMISSED;

4. Defendants Clauss and Government Employees Insurance Company are DISMISSED from the case; and

5. Defendant United States' request for an evidentiary hearing, dkt. #93, is DENIED as unnecessary.

Entered this 27th day of January, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge